**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**UNITED STATES CURRENCY IN THE AMOUNT OF $2,857.00,**
**Defendant-Appellant.**

No. 83–3107.

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 2, 1984.*

Decided Jan. 28, 1985.

* Only one party appeared at the scheduled oral argument on November 2. Rather than rescheduling oral argument, the court allowed the missing party to file a statement outlining the arguments it would have made to the court. The other party was allowed to respond, and the case was submitted on the briefs and those statements.

J. Frank Hanley, II, Indianapolis, Ind., for defendant-appellant.

Lloyd B. Monroe, Asst. U.S. Atty., Sarah Evans Barker, U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before WOOD and FLAUM, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.**

FLAUM, Circuit Judge.

This appeal is taken from the district court's grant of summary judgment to the United States in a forfeiture action against $2,857 in United States currency. The issues presented by this case concern the relationships between an administrative summary forfeiture proceeding, an administrative petition for remission or mitiga-

** The Honorable Clement F. Haynsworth, Jr., Senior Circuit Judge for the United States Court of Appeals for the Fourth Circuit, is sitting by designation.

tion of forfeiture, and a judicial forfeiture proceeding. For the reasons stated below, we affirm the judgment of the district court.

## I.

United States currency in the amount of $2,857 was seized from claimant-appellant Dale J. Raymer on October 21, 1982, by agents of the Drug Enforcement Administration ("DEA"). The seizure was incident to a search of Raymer's residence under a search warrant. The DEA seized the currency pursuant to 21 U.S.C. § 881(a)(6), alleging that the money was furnished or intended to be furnished in exchange for a controlled substance. The DEA promptly instituted a summary forfeiture proceeding against the currency under 19 U.S.C. § 1608 (1982).[1] In a letter dated December 16, 1982, the DEA formally notified Raymer that it was taking steps to forfeit the currency, and further advised him of the procedures he could utilize to contest the forfeiture.

Raymer filed a timely claim to the currency and a cost bond of $250 with the DEA on December 31, 1982, pursuant to 19 U.S.C. § 1608. See also 19 C.F.R. § 162.47 (1984). As required by statute, the DEA then forwarded all paperwork to the United States Attorney for the Southern District of Indiana, where the currency was seized, for the institution of judicial condemnation proceedings. See 19 U.S.C. § 1608; 19 C.F.R. § 162.47(d) (1984); 21 C.F.R. § 1316.76(a) (1984). The DEA sent Raymer a letter notifying him of the transfer on January 6, 1983.

On January 7, 1983, Raymer filed a verified petition for remission or mitigation of the forfeiture with the DEA pursuant to 19 U.S.C. § 1618. See also 21 C.F.R. § 1316.79 (1984). Upon receipt of Raymer's petition for remission on January 10, the DEA forwarded it to the U.S. Attorney and notified Raymer that it had done so in a letter received by Raymer's counsel on February 4, 1983.

■ The U.S. Attorney, meanwhile, instituted a judicial condemnation proceeding against the currency on January 26, 1983, by filing a complaint in the United States District Court for the Southern District of Indiana. Raymer was served with a copy of the complaint. On February 1, the district court issued orders for warrant of arrest of property and for publication of notice pursuant to Supplemental Rule C(3) and (4) of the Supplemental Rules of Civil Procedure for Certain Admiralty and Maritime Claims.[2] A copy of the order for

---

1. 19 U.S.C. §§ 1602–1618 provide for the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims. These sections apply to section 881 forfeitures under 21 U.S.C. § 881(d), which provides:

   The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof....

   Congress has recently made minor modifications to 19 U.S.C. §§ 1602–1618 in the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, §§ 311–321, 98 Stat. 1837 (1984). These amendments do not affect this proceeding, however.

2. The forfeiture of property seized on land may be enforced by a proceeding in libel conforming as nearly as possible to a proceeding in admiralty. See 28 U.S.C. § 2461(b) (1982); United States v. $5,372.85 United States Coin and Currency, 283 F.Supp. 904, 905–06 (S.D.N.Y.1968) (discussing historical connection between actions in forfeiture and admiralty law). The Supplemental Rules for Certain Admiralty and Maritime Claims specifically apply to "the procedure in statutory condemnation proceedings analogous to maritime actions in rem, whether within the admiralty and maritime jurisdiction or not." Fed.R.Civ.P., Supp. Rule A. See also United States v. Fourteen (14) Handguns, 524 F.Supp. 395, 397 (S.D.Tex.1981) (Supplemental Rules apply to statutory condemnation proceeding involving seizure on land); United States v. $5,372.85, 283 F.Supp. at 906 (same). The Federal Rules of Civil Procedure apply to forfeiture proceedings except where inconsistent with the Supplemental Rules, which essentially govern

publication of notice was sent to Raymer's counsel. The order specifically required all persons who had an interest in the currency to file a claim in the district court within ten days of the date of publication, and to serve and file an answer within twenty days of the filing of their claim. The notice was published in the *Indianapolis Commercial* on six separate occasions between February 11, 1983, and March 25, 1983.

On February 4, 1983, Raymer served and filed an answer to the complaint for forfeiture. Raymer did not file any claim to the currency in the district court, as required by the order for publication of notice and Supplemental Rule C(6).

On May 4, 1983, the government moved for summary judgment on the grounds that no claim had been filed as required by Supplemental Rule C(6) and that the time for filing such a claim had passed. The government argued that Raymer, having failed to file a verified claim, had no standing to file an answer. Since his answer was therefore null and void, the government concluded that it was entitled to judgment as a matter of law.

In response to the motion for summary judgment, Raymer argued that the Supplemental Rules were not applicable to this case and that his answer fulfilled any jurisdictional requirement of the district court.

The district court granted the government's motion for summary judgment on October 28, 1983, and entered judgment for the United States. The court ordered the currency paid into the United States Treasury.

On appeal, Raymer argues that (1) the Supplemental Rules governing notice and the filing of a claim do not apply to this proceeding; (2) the claim he filed with the DEA sufficiently fulfilled the district court's claim requirement; (3) the petition for remission he filed with the DEA fulfilled the district court's claim requirement; (4) he was deprived of his property without

only the institution of forfeiture proceedings. *See* Fed.R.Civ.P., Supp. Rule A; *United States v.*

due process of law because he had no notice that his DEA claim was insufficient for the district court; and (5) the government waived any defect in his DEA claim by not objecting earlier.

## II.

There is no question that all of the Supplemental Rules of Civil Procedure apply to this judicial forfeiture proceeding, *see supra* note 2, and that Raymer failed to file a verified claim to the currency in the district court as required by Supplemental Rule C(6). Raymer's argument that the claim he filed at the administrative level should be deemed to fulfill the district court's claim requirement reflects a basic misunderstanding of the relationship between an administrative summary forfeiture proceeding and a judicial forfeiture proceeding. We therefore begin with a brief explanation of the relationship between the two proceedings.

### A. Summary Forfeiture

■ Prior to 1844, the only way the government could effect a forfeiture of goods it had seized was to promptly institute a suit for forfeiture. *See McGuire v. Winslow,* 26 Fed. 304, 306 (C.C.N.D.N.Y. 1886). This judicial forfeiture suit was tried in the district court as a proceeding *in rem,* in which all interested parties could intervene and contest the forfeiture. *Id.* By act of April 2, 1844, Congress enabled the government to utilize a summary forfeiture procedure in cases where the value of the property seized was $100 or less. *Act of April 2, 1844,* ch. 8, 5 Stat. 653. The purpose of the summary forfeiture procedure was to save the government the time and expense of a judicial condemnation proceeding in cases where the value of the seized property was small. *See Conway v. Stannard,* 84 U.S. (17 Wall.) 398, 404, 21 L.Ed. 649 (1873); *United States v. One Tintoretto Painting Entitled "The*

*$5,372.85,* 283 F.Supp. at 906.

*Holy Family With Saint Catherine and Honored Donor"*, 691 F.2d 603, 608 (2d Cir.1982); *McGuire v. Winslow*, 26 Fed. at 307. The jurisdictional limit, established at $100 in 1844, was $10,000 at the time of the seizure in this case. *See* 19 U.S.C. § 1607 (1982).[3]

■ A summary forfeiture proceeding takes place at the administrative level, and begins when the agency making the seizure publishes notice of the seizure for three successive weeks in a newspaper of general circulation in the judicial district in which the seizure occurred. *See* 19 U.S.C. § 1607; 19 C.F.R. § 162.45(b)(1) (1984). If no claim to the seized property is filed within twenty days from the date of the first publication of the notice of seizure, the agency declares the property forfeited. *See* 19 U.S.C. § 1609. The summary forfeiture proceeding is stopped, however, if any person files a claim to the seized property within the twenty-day period, stating his interest therein, and deposits with the agency a $250 bond to the United States conditioned that if the property is condemned the obligor shall pay all costs and expenses of the condemnation proceedings. *See* 19 U.S.C. § 1608; 19 C.F.R. § 162.47(c) (1984) (filing of claim and cost bond stops summary forfeiture proceeding); 21 C.F.R. § 1316.76(b) (1984) (same); *One Tintoretto Painting*, 691 F.2d at 608 (same). Upon the filing of a claim and cost bond, the agency must forward all paperwork to the United States attorney for the district where the property was seized for the institution of judicial condemnation proceedings in the ordinary mode prescribed by law. *See* 19 U.S.C. § 1608; 19 C.F.R. § 162.47(d) (1984); 21 C.F.R. § 1316.76(a) (1984); *United States v. Eight Bales # S I.J.K.*, 227 F.Supp. 425, 427 (S.D.N.Y.1964) (once claim filed, summary procedure automatically stopped and matter referred to U.S. attorney for condemnation in usual manner).

■ In short, summary forfeiture is an administrative process that is available to the government *only* if the value of the property seized is less than the jurisdictional amount *and* if no claim to the property is filed within twenty days after the date of the first publication of the notice of seizure. The legal effect of an administrative claim and cost bond is solely to stop the summary forfeiture proceeding and force the government to institute a judicial condemnation proceeding. An administrative claim does not give the claimant any rights in the judicial condemnation proceeding; it only insures that a judicial proceeding will take place before the property is forfeited. The claimant then has the opportunity, *if* he meets the district court's procedural requirements, to contest the forfeiture in court.

### B. Judicial Forfeiture

A judicial forfeiture proceeding is a civil action *in rem*. The United States attorney for the district where the seizure occurred commences a judicial forfeiture proceeding by filing a complaint as described in Supplemental Rule C(2). The complaint must describe with reasonable particularity the property that is the subject of the action, must state the place of seizure, and must contain any allegations required by the statute pursuant to which the action is brought. *See* Fed.R.Civ.P., Supp. Rule C(2).

Upon the filing of a complaint, the clerk of the district court issues a warrant for the arrest of the property that is the subject of the action. *See* Fed.R.Civ.P., Supp. Rule C(3). By order of the court, the plaintiff then must publish notice of the action and arrest in a newspaper of general circulation in the district. The notice must specify the time within which an answer is to be filed as provided by Rule C(6). *See* Fed.R.Civ.P., Supp. Rule C(4).

Any claimant of property that is the subject of a judicial condemnation proceeding must file a claim within ten days after process has been executed or within such

---

**3.** Congress has since raised this limit to $100,-000. *See* Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 311, 98 Stat. 1837 (1984).

additional time as may be allowed by the court, and must file an answer within twenty days after the filing of the claim. *See* Fed.R.Civ.P., Supp. Rule C(6). The claim "shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action." *Id.* Once the procedural requirements of Rule C(6) are met, a claimant has standing to defend the forfeiture.

## C. Analysis

In this case the value of the seized property was less than $10,000, so the seizing agency (the DEA) instituted a summary forfeiture proceeding. The summary proceeding ended, however, when Raymer filed his timely claim and cost bond with the DEA on December 31, 1982. At that point, the DEA forwarded all paperwork to the U.S. Attorney for the institution of a judicial forfeiture proceeding.

The judicial condemnation proceeding commenced on January 26, 1983, when the U.S. Attorney filed a complaint in the district court. The court issued a warrant for arrest of the property and ordered publication of notice. Raymer filed an answer on February 4, 1983. Raymer did not, however, file a verified claim as required by Supplemental Rule C(6).

▮ Raymer argues that the claim he filed with the DEA fulfills the claim requirement of Supplemental Rule C(6). This argument fails for several reasons. First and foremost, the claim Raymer filed with the DEA was not verified on oath or solemn affirmation, an essential element of a claim under Rule C(6). *See Baker v. United States,* 722 F.2d 517, 519 (9th Cir.1983) (danger of false claims in forfeiture proceedings is substantial). Second, the DEA claim preceded the execution of process under Rule C(3), whereas Rule C(6) requires a claim to be filed *after* process has been executed. Third, Raymer filed his DEA claim on December 31, 1982. Even if it could be deemed a claim under Rule C(6), therefore, Raymer's answer would be un-

timely because it was filed more than twenty days thereafter. Lastly, a Rule C(6) claim must be filed with the district court. Raymer filed his earlier claim with the DEA, which then forwarded it to the U.S. Attorney. The claim was never filed in the district court, and the record indicates that the first the district court saw of the claim was when Raymer attached a copy of it to his response to the government's motion for summary judgment on May 16, 1983. Such a claim does not fulfill an important function of the claim requirement of Rule C(6)—notifying the court that the claimant is entitled, by virtue of his sworn claim to the property, to join the action and be heard. In the single case that we have found that allowed a claimant to be heard despite technical noncompliance with Rule C(6), the court did so because it found a sufficient showing of the claimant's interest in the seized goods based on a motion and accompanying affidavits that the claimant had filed *with the court. See United States v. Articles of Hazardous Substance,* 444 F.Supp. 1260, 1263 (M.D.N.C. 1978), *aff'd in part, rev'd in part,* 588 F.2d 39 (4th Cir.1978). In contrast, Raymer filed nothing with the district court to notify the court that he had a sworn interest in the currency. Although his answer admitted a paragraph in the complaint stating that Raymer was believed to be the owner of the currency, the answer was unsworn and signed only by Raymer's counsel. The answer did not refer to either Raymer's DEA claim or his petition for remission. There were no accompanying affidavits.

In sum, Raymer's DEA claim cannot be deemed to fulfill the claim requirement of Supplemental Rule C(6). *See United States v. One 1979 Oldsmobile-Cutlass Supreme,* 589 F.Supp. 477, 478 (N.D.Ga.1984) (claimant who filed answer in district court without filing claim, in mistaken belief that prior administrative claim was sufficient, did not have essential element of standing to contest forfeiture—the filing of a proper claim under Rule C(6)).

## III.

▮ Raymer next argues that he should be deemed to have fulfilled the

claim requirement of Rule C(6) by virtue of the petition for remission or mitigation of forfeiture that he filed with the DEA on January 7, 1983. A petition for remission or mitigation of forfeiture is a petition for administrative relief, not judicial relief. *See United States v. Fourteen (14) Handguns,* 524 F.Supp. 395, 397 (S.D.Tex.1981). It gives the Attorney General virtually unreviewable discretion to ameliorate the harshness of forfeiture statutes in appropriate cases. *See Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 689 n. 27, 94 S.Ct. 2080, 2095 n. 27, 40 L.Ed.2d 452 (1974); *United States v. One 1976 Porsche 911S,* 670 F.2d 810, 813 (9th Cir. 1979) (per curiam). For example, administrative relief may be appropriate where the defendant property violates a law but where the owner of the property has no knowledge of the violation, or where a claimant in good faith and through no fault of his own is unaware of the seizure prior to the declaration of forfeiture. *See* 19 U.S.C. § 1618 (1982) (Secretary of Treasury may remit or mitigate forfeiture if finds that forfeiture incurred "without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify" remission or mitigation).

A petition for remission must be filed within thirty days of receipt of the notice of seizure. *See* 21 C.F.R. § 1316.80(a) (1984). It must be executed and sworn to by the person alleging an interest in the property. *See* 21 C.F.R. § 1316.79(a) (1984). It must include a complete description of the property, the petitioner's interest in the property, and the facts and circumstances relied on by the petitioner to justify remission or mitigation. *See* 21 C.F.R. § 1316.79(b) (1984).

In this case, Raymer filed a petition for remission or mitigation of forfeiture with the DEA on January 7, 1983. Because he had already filed a claim and cost bond,

however, the DEA had no jurisdiction to act on the petition for remission. *See* 19 C.F.R. § 171.24(a) (1984); *cf. United States v. $8,850 in United States Currency,* 461 U.S. 555, 103 S.Ct. 2005, 2013, 76 L.Ed.2d 143 (1983) (discussing policy reasons why administrative petition for remission should be submitted and acted upon before institution of judicial condemnation proceeding). The DEA accordingly forwarded Raymer's petition to the U.S. Attorney, as required by 21 C.F.R. § 1316.81 (1984).

■ Raymer's petition for remission does not fulfill the claim requirement of Supplemental Rule C(6) for many of the same reasons his DEA claim falls short. Although Raymer verified the petition for remission by affirmation, he filed it (1) prior to the execution of process, (2) more than twenty days before filing an answer in the district court, and (3) with the DEA, *not* with the court. We must conclude that neither Raymer's DEA claim nor his petition for remission can be deemed to satisfy the claim requirement of Supplemental Rule C(6). Raymer failed to file anything with the district court setting forth his sworn interest in the currency, and thus had no standing to file an answer or otherwise participate in the proceedings.

### IV.

Raymer finally argues that he was deprived of his property without due process of law because he had no notice that his prior DEA claim was insufficient for the district court, and that the government waived any defect in his DEA claim by failing to object earlier. These arguments merely attempt to shift the blame for Raymer's failure to file a proper claim to the district court and the government for neglecting to inform him of his error.

The district court gave Raymer adequate notice of its claim requirement in the order for publication of notice issued February 1, 1983, a copy of which was sent to Raymer's counsel.[4] Despite the order's explicit in-

---

4. The order stated as follows:

    IT IS THEREFORE ORDERED that public notice of this action be given by publication in the *Indianapolis Commercial,* a newspaper of general circulation in the district. All persons who may have an interest in the property

struction that claims must be filed *in the district court* within ten days of the date of publication, Raymer failed to file a claim, now alleging that he believed the claim he filed with the DEA over a month earlier to be sufficient.

■ We refuse to hold that due process requires the district court, once it has given a potential claimant notice of a proceeding and advice on how to properly join the proceeding, to take the additional step of reviewing all filings by a potential claimant in order to notify the claimant of any missing filings or of any defects in its filings. If Raymer had promptly argued that his failure to file a claim was due to his mistaken belief that his prior DEA claim was sufficient, the district court could have, in its discretion, given Raymer additional time to file a proper claim. *See United States v. One 1979 Oldsmobile-Cutlass Supreme,* 589 F.Supp. 477, 478 (N.D.Ga.1984) (claimant who filed answer in district court without filing claim, in mistaken belief that prior administrative claim was sufficient, given 10 additional days from date of order to file proper claim under Rule C(6)); Fed. R.Civ.P., Supp.Rule C(6) (claim must be filed within 10 days after process executed "or within such additional time as may be allowed by the court"). The district court would not, however, have been required to do so.

■ We also refuse to hold that the government waived any objection to Raymer's DEA claim as a sufficient claim under Supplemental Rule C(6) by waiting until the time for filing a proper claim had expired before objecting. The government was not even informed that Raymer was relying on his prior DEA claim to fulfill the claim requirement of Rule C(6) until this appeal. Raymer's first response to the

government's motion for summary judgment asserted only that Supplemental Rule C(6) did not apply to this proceeding and that his *answer* met any notice requirements of the district court. If Raymer himself did not argue that his prior DEA claim fulfilled the district court's claim requirement until this appeal, it would be ridiculous to require the government to foresee that argument and refute it early enough to give Raymer time to file a valid claim.

The government undoubtedly knew from Raymer's answer and the claim which had been forwarded to it by the DEA that Raymer intended to join the action and contest the forfeiture. As an adverse party, however, it had no duty to advise Raymer of any shortcomings in his submissions so as to facilitate his task. The government did not take any steps to litigate this action before filing its motion for summary judgment on the ground that no claims had been filed under Rule C(6), nor did it otherwise mislead the court or Raymer into believing it had no objection to his failure to file a valid claim. In short, the government did not waive any objection to Raymer's failure to file a proper claim under Rule C(6), an essential element of his standing to contest this forfeiture.

### V.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the United States.[5]

■

---

which is the subject matter of this action are directed to file their claims in the United States District Court for the Southern District of Indiana within ten (10) days of the date of publication, and to serve and file an answer within 20 days of the filing of their claim.

**5.** The government suggests that the district court's grant of summary judgment could have been properly based on the merits of this case

rather than the procedural problems discussed on appeal. However, the merits were never argued or briefed to the district court. We therefore consider, and assume that the district court considered, the procedural aspects of this case only. It is on that basis that we affirm the district court's entry of judgment for the United States.